## In Re Anonymous No. 22 D.B. 83

Disciplinary Board Docket No. 22 D.B. 83.

CURRAN, Member, April 2, 1985—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

A petition for discipline by Chief Disciplinary Counsel in the above captioned matter was filed on June 6, 1984. The petition contained allegations that respondent had violated the following Disciplinary Rules:

D.R. 1-102(A)(4); D.R. 1-102(A)(6); D.R. 6-101(A)(3); D.R. 7-102(A)(4); D.R. 7-102(A)(5); D.R. 9-102(A); D.R. 9-102(B)(3); D.R. 9-102(B)(4); D.R. 1-102(A)(1) and D.R. 3-101(B).

Because there were allegations in the charges against respondent of financial mismanagement of clients' funds, emergency relief was ordered under Pennsylvania Rule of Disciplinary Enforcement 208(f). Pursuant thereto, respondent was suspend-

ed from the practice of law effective as of June 30, 1983, which suspension continues in effect.

The Disciplinary Counsel has urged that respondent be disbarred from the practice of law. On the other hand, respondent has requested that he be suspended effective the date of his emergency suspension and reinstated as of the date of this order.

In a 93 page opinion, hearing committee [   ] rendered a thorough discussion of the matter therein recommending that respondent be suspended from the practice of law to January 1, 1986. After careful consideration of the matter, it is the recommendation of this board that the bearing committee's recommendation of suspension to January 1, 1986, is appropriate under the circumstances.

## CHARGE I

Relative to the [A] case, respondent is charged with violation of the following mentioned Disciplinary Rules:

D.R. 1-102(A)(4). Misconduct

(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

D.R. 1-102(A)(6). Misconduct

(A) A lawyer shall not:

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

D.R. 6-101(A)(3). Failing to Act Competently

(A) A lawyer shall not:

(3) Neglect a legal matter entrusted to him.

D.R. 7-102(A)(4). Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(4) Knowingly use perjured testimony or false evidence.

D.R. 7-102(A)(5). Failing to Act Competently.

(A) A lawyer shall not:

(5) Knowingly make a false statement of law or fact.

D.R. 9-102(A). Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

D.R. 9-102(B)(3). Preserving Identity of Funds and Property of a Client.

(B) A lawyer shall:

(3) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

D.R. 9-102(B)(4). Preserving Identity of Funds and Property of a Client.

(B) A lawyer shall:

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Essentially, the [A] matter concerned a dispute with respect to an income tax refund check of $589. [A] alleged that he had instructed respondent to use this money to pay delinquent property taxes on real estate which he had owned. When this had not been done as was evident from [A] checking with the appropriate taxing bodies, [A] filed a complaint before the board.

We are pursuaded from examining the testimony that respondent's behavior in the [A] matter violated

the above cited Disciplinary Rules. It is clear that respondent violated the instructions of his client in not paying the property taxes from the escrowed funds. Rather, respondent held those funds in his escrow account, and when he was requested to return them to [A], deducted from the escrowed amount, an amount he claimed due to him in attorney's fees and then returned to [A] the sum of $214. It should also be noted that during the time the escrowed amount of $528.37 was held in respondent's [B] account, the account was "out of trust" with respect to that amount. It should be noted, however, that we adopt the finding of the hearing committee that in his behavior in the [A] matter, respondent did not violate Disciplinary Rules 1-102(A)(4) and 1-102(A)(6) involving dishonest or deceitful conduct in relation to his responses to Disciplinary Counsel.

Due to an inadequate system of bookkeeping and commingling of client and personal funds, we do find violation of the Disciplinary Rules cited at the beginning of this count. We point out that no harm was suffered by [A] since he did in fact pay the taxes in question. However, there was certainly a possibility for harm due to the actions of respondent in violation of the Disciplinary Rules.

## CHARGE II

Respondent is charged with violation of the following mentioned Disciplinary Rules:

DR. 1-102(A)(4). Misconduct

(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

D.R. 9-102(A). Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

D.R. 9-102(B)(4). Preserving Indentity of Funds and Property of a Client.

(B) A lawyer shall:

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Facts elicited by stipulation of counsel and direct evidence establish that in addition to being out of trust with respect to the aforementioned [B] account, respondent also maintained an account in [B] entitled "[Respondent], Esq., Attorney-at-law, Trustee Account". Although respondent knew it to be improper, he used this account as a depository for both his personal funds and funds entrusted to him by clients. Evidence indicated that on many occasions the balance in this account was less than the total clients' funds which was to have been on depository there. Thus, there were many occasions on which this account was "out of trust".

However, in mitigation it must be noted that there was no evidence that any client had ever lost any funds or suffered pecuniary loss due to respondent's improper handling of this escrow account.

## COUNT III

Respondent is charged with violation of the following mentioned Disciplinary Rules:

D.R. 1-102(A)(4). Misconduct.

(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

D.R. 9-102(A). Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

D.R. 9-102(B)(4). Preserving Identity of Funds and Property of a Client.

(B) A lawyer shall:

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

In addition to the aforesaid [B] account, respondent maintained an account in the [C] Company entitled "[Respondent], Attorney-at-Law". In this account, respondent also deposited both personal funds and funds entrusted to him by clients. Paralleling the account in the [C] Company, this account was also "out of trust" on many occasions.

## CHARGE IV

Respondent is charged with violation of the following mentioned Disciplinary Rules:

D.R. 1-102(a)(4). Misconduct.

(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

D.R. 9-102(B)(3). Preserving Identity of Funds and Property of a Client.

(B) A lawyer shall:

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

The facts elicited in support of this charge can be briefly summarized as follows: Since April, 1981, respondent has maintained a separate "Cash Receipts" ledger purportedly reflecting, among other things, receipt of income, escrow funds and other funds. However, this ledger was not always accurate. Nobody ever reconciled the ledger with the two bank trust account balances. On the other hand, it was not denied that respondent maintained separate records of entrusted funds in each client's file.

However inadequate respondent's bookkeeping, he did maintain a separate record of each client's funds, but he failed to reconcile this with bank statements or with his own bookkeeping system.

Petitioner avers that respondent has engaged in dishonest conduct in an attempt to "cheat the I.R.S.". However, we adopt the hearing committee's report that while there was neglect and solvenly bookkeeping practices, there was not any evidence to convince the committee that there was a deliberate attempt to cheat the I.R.S.

## CHARGE V

Respondent is charged with violation of the following mentioned Disciplinary Rules:

D.R. 1-102(A)(1). Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

D.R. 1-102(A)(4). Misconduct.

(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

The petition indicates that the alleged violation of D.R. 1-102(A)(1) is respondent's failure to comply with Pa. Rule of Disciplinary Enforcement 217(a), (b) and (e) and Disciplinary Board Rules 91.92 and 91.95. These are as follows:

"Pa. RDE 217. Formerly admitted attorneys.

(a) A formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigation or administrative proceedings, of the disbarment, suspension or transfer to inactive status and the consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status and shall advise said clients to seek legal advice elsewhere.

(b) A formerly admitted attorney shall promptly notify, or cause to be notified by registered or certified mail, return receipt requested, all clients who are involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of the disbarment, suspension or transfer to inactive status and consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status. The notice to be given to the client shall advise the prompt substitution of another attorney or attorneys in place of the formerly admitted attorney. In the event the client does not obtain substitute counsel before the effective date of the disbarment, suspension or transfer to inactive status, it shall be the responsibility of the formerly admitted attorney to move in the court or agency in which the proceeding is pending for leave to withdraw. The notice to be given to the attorney or attor-

neys for an adverse party shall state the place of residence of the client of the formerly admitted attorney.

(e) Within ten days after the effective date of the disbarment, suspension or transfer to inactive status order, the formerly admitted attorney shall file with the board a verified statement showing:

(1) that the provisions of the order and these rules have been fully complied with; and

(2) all other state, federal and administrative jurisdictions to which such person is admitted to practice. Such statement shall also set forth the residence or other address of the formerly admitted attorney where communications to such person may thereafter be directed."

"Section 91.91. Notification of clients in nonlitigation matters.

(a) General Rule. Enforcement Rule 217(a) provides that a formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigation or administrative proceedings, of the consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status and shall advise such clients to seek legal advice elsewhere. Such notices shall be substantially the language of Form DB-23 (Nonlitigation Note of Disbarment, Suspension or Transfer to Inactive Status).

(b) Copies of notices. The formerly admitted attorney shall file photocopies of such notices and returned receipts in the Office of the Secretary."

Section 91.92. Notification of clients in litigation matters.

(a) General rule. Enforcement Rule 217(b) provides that a formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, all clients who are involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of the disbarment, suspension or transfer to inactive status and consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the disbarment, suspension or transfer to inactive status. Such rule further provides that the notice to be given to the client shall advise the prompt substitution of another attorney or attorneys in place of the formerly admitted attorney; that in the event the client does not obtain substitute counsel before the effective date of the disbarment, suspension or transfer to inactive status, it shall be the responsibility of the formerly admitted attorney to move in the court or agency in which the proceeding is pending for leave to withdraw; and that the notice to be given to the attorney or attorneys for an adverse party shall state the place of residence of the client of the formerly admitted attorney. Such notices shall be in substantially the language of Form DB-24 (Litigation Notice of Disbarment, Suspension or Transfer to Inactive Status).

(b) Copies of notices. The formerly admitted attorney shall file photocopies of such notices and returned receipts in the Office of the Secretary.

"Section 91.95. Proof of compliance.

(a) General rule. Enforcement Rule 217(e) provides that within ten days after the effective date of the disbarment, suspension or transfer to inactive status order, the formerly admitted attorney shall

file with the Board a verified statement (Form DB-25) (Statement of Compliance) showing:

(1) That the provisions of the order and Enforcement Rules have been fully complied with; and

(2) All other state, federal and administrative jurisdictions to which such person is admitted to practice.

(b) Notice of address. Enforcement Rule 217(e) further provides that such Form DB-25 shall also set forth the residence or other address of the formerly admitted attorney where communications to such person may thereafter be directed."

Preliminarily the hearing committee must address a question of definition. D.R. 1-102(A)(1) is a rule which forbids violation of a "Disciplinary Rule". The "Disciplinary Rules" are appended to the "Code of Professional Responsibility" (Canons of Ethics). Taken literally, D.R. 1-102(A)(1) makes a violation of a rule a violation of another rule. To avoid this absurdity and to make sense out of D.R. 1-102(A)(1), the hearing committee assumes that to "violate a Disciplinary Rule" includes violation of any rule relative to disciplinary proceedings. Thus, the definition of "Disciplinary Rule" would seem to include not only the Disciplinary Rules appended to the Code of Professional Responsibility, but also the "Pennsylvania Rules of Disciplinary Enforcement" and the "Rules of Disciplinary Board". The petition in this case seems to embrace the same definition. With this definition in mind, we will examine Charge V.

By order of the Supreme Court dated June 30, 1983, respondent was suspended from the practice of law "forthwith". Presumably this action was taken pursuant to Pa. Rule of Disciplinary Enforcement 208(f) relative to emergency relief. Rule 217(d) provides, in part, that an order of suspension

shall be effective thirty days after entry. It is not clear whether 217(d) is applicable to an emergency interim suspension. In any event, the secretary of the Disciplinary Board advised respondent to comply with Rule 217, by her letter dated July 6, 1983, enclosing a copy of the "Standard Guidance of the Disciplinary Board to Lawyers who have been suspended under Rule 208(f) and 214 Pa. R. D. E.". Among other things, this directed respondent to notify "promptly" all clients in pending matters of his suspension, as well as the attorneys for adverse proceedings, by certified mail, return receipt requested; to file copies of the notices, and the return receipts, with the office of the secretary; to file a "statement of compliance" within ten days after the effective date of suspension, as well as the copies of notices and return receipts aforesaid.

Respondent did not file the statement of compliance timely. The secretary's office received it on August 12, 1983, dated August 8, 1983. It was not accompanied by copies of notices to clients and return receipts. In fact, when respondent signed the Statement of Compliance, certified by him under penalties provided by 18 Pa. C.S. §4904, he did not provide copies of notices of suspension to clients; he had not yet mailed those notices to clients; he had not yet delivered a list of names and addresses of current clients to petitioner as required specially by the Supreme Court in its suspension order of June 30, 1983.

After prompting by the secretary's letter of September 6, 1983, respondent provided a list of current clients to petitioner on December 20, 1983. Some time after that date, he filed copies of client notices and return receipts with [the secretary's] office, showing that the notices were mailed on August 11, 1983, which was three days after the state-

ment of compliance had been executed and verified.

In his defense, respondent testified that, after consultation with counsel, he thought the effective date of suspension was July 30, 1983, and that he had until August 9, 1983, to comply with Rule 217. He attempted compliance but his notices were mailed on August 11, 1983, two days late by his own computations.

Petitioner contends that respondent violated Disciplinary Rule 1-102(A)(1) and Rule 1-102(A)(4).

Clearly, respondent failed to comply with Rule of Disciplinary Enforcement 217 and with Disciplinary Board Rule 91.95. By his own computations, he mailed notices to clients two days late; by petitioner's computations, 32 days late. He did not file copies of these notices and return receipts with [the secretary's] office until after December 20, 1983, although he was required to file these within ten days after the effective date of suspension. He did not supply petitioner with a list of current clients until December 20, 1983, in spite of the Supreme Court order of suspension June 30, 1983, that this be done "immediately." However, respondent argues that he made a "good faith attempt" to comply, and that he was ignorant of the requirement to file notices to clients with the board. He argues that he was without wrongful intent.

To some extent, respondent can successfully contend that he was a victim of confusion resulting from the Supreme Court's order and the consequent directions from the Disciplinary Board. Rule 217 clearly provides that a suspension order shall be effective 30 days after entry, but the order of June 30, 1983, suspended respondent "forthwith" and ordered him to give petitioner a client list immediately. Respondent did not even receive formal notice of his suspension "forthwith" until he received [the

secretary's] letter dated six days later. Perhaps the Supreme Court can arbitrarily override Rule 217(c) which makes the suspension effective after 30 days, but at least it created an ambiguity in this case. What was the effective date of suspension? Respondent and his counsel concluded that it was July 30, 1983. Certainly, such conclusion is arguable under the circumstances, and the hearing committee will not impute a wrongful intent to respondent for failing to reach petitioner's conclusion that the effective date was June 30, 1983. It is more reasonable to interpret the order in light of Rule 217(c) which affords a 30 day period for the suspended attorney to attend to the many important details of suspending his practice. Just compiling a mailing list and sending notices by certified mail to every client can be, in itself, a time-consuming task, and one that the attorney might have to do without secretarial help, as a matter of financial expediency. Further, respondent had been notified that Rule 217 was applicable to him.

But accepting arguendo respondent's version of his timetable, he prepared a statement of compliance and filed it two days late. This, in itself, is not of such great significance, but the statement falsely certified compliance. He did not file the copies of notices and return receipts until three months later and he did not supply petitioner with the client list until after that.

Either this was gross neglect or defiance.

The hearing committee believes that respondent's conduct was in violation of Disciplinary Rule 1-102(A)(1). Further, the statement of compliance was not late, but false. Therefore, his conduct also was in violation of Disciplinary Rule 1-102(A)(4) because of the misrepresentation.

Even if the definition of "Disciplinary Rule" in D.R. 1-102(A)(1) does not include the Pennsylvania Rules of Disciplinary Enforcement or the Rules of the Disciplinary Board, respondent has violated D.R. 1-102(A)(1) by violating D.R. 1-102(A)(4).

## CHARGE VI

Respondent is charged with violation of the following mentioned Disciplinary Rules:

D.R. 1-102(A)(1). Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

D.R. 1-102(A)(4). Misconduct.

(A) A lawyer shall not.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

D.R. 1-102(A)(6). Misconduct.

(A) A lawyer shall not:

(6) Engage in any other conduct that adversely reflects on his fitness to practive law.

D.R. 3-101(B). Aiding Unauthorized Practice of Law.

(B) A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

The petition indicated that the alleged violation of D.R. 1-102(A)(1) is respondent's failure to comply with Pennsylvania Rule of Disciplinary Enforcement 217(d) and Disciplinary Board Rule 91.94. These are as follows:

"Pa. R. D. E. 217. Formerly admitted attorneys.

(d) Orders imposing suspension, disbarment or transfer to inactive status shall be effective 30 days after entry. The formerly admitted attorney, after entry of the disbarment, suspension or transfer to inactive status order, shall not accept any new re-

tainer or engage as attorney for another in any new case or legal matter of any nature. However, during the period from the entry date of the order and its effective date the formerly admitted attorney may wind up and complete, on behalf of any client, all matters which were pending on the entry date.

Section 91.94. Effective date of suspension, disbarment or transfer to inactive status.

Enforcement Rule 217(d) provides that orders imposing suspension, disbarment or transfer to inactive status shall be effective 30 days after entry; that the formerly admitted attorney, after entry of the disbarment, suspension or transfer to inactive status order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature; but that, during the period from the entry date of the order to its effective date the formerly admitted attorney may wind up and complete, on behalf of any client, all matters which were pending on the entry date."

As hereinabove discussed under Charge V, the hearing committee assumes that D.R. 1-102(A)(1) refers to violation of the Pennsylvania Rules of Disciplinary Enforcement and the Rules of the Disciplinary Board, as well as to violations of the Disciplinary Rules.

In May of 1983, through [D] Legal Clinic, [E] retained respondent to obtain a no-fault divorce. The Supreme Court suspended respondent from the practice of law "forthwith" by order of June 30, 1983. In July, 1983, [E] paid respondent $300 for his legal fee in the divorce case, and later that month Mrs. [E] met with respondent in his office. Respondent never informed either of his suspension.

On the evening of July 27 or July 28, 1983, respondent met with [E] and advised him that another

lawyer in the [D] Legal Clinic would be handling the case. Between September 13 and 23, 1983, respondent referred the case to attorney [F] who arranged an appointment with [E].

Meanwhile, Mrs. [E] made several futile attempts to contact respondent in October, 1983.

Between September 13 and 23, 1983, when respondent referred the [E] case to attorney [F], he gave attorney [F] a prepared complaint in divorce to which [E]'s name had already been signed and his affidavit dated September 13, 1983, had been completed. Attorney [F] filed the complaint on September 23, 1983, and took no further action until contacted by petitioner on January 30, 1984. In October, 1983, Mrs. [E] learned for the first time of respondent's suspension. When respondent filed his list of clients as of June 30, 1983, neither Mr. nor Mrs. [E] appeared on that list. Certainly one or both names should have appeared. Whether accepting a fee in July and having the complaint signed and verified was in violation of the suspension order depends on two things, viz., was the suspension effective June 30, 1983, or July 30, 1983, and when was the complaint prepared, signed and verified. We have already discussed the ambiguity of the effective date of suspension. There is direct evidence that [E] signed the complaint in respondent's office on July 28, 1983, and it is a fair inference that respondent prepared it. But this occurred during the 30 day period in question. Therefore, the hearing committee does not conclude that respondent violated Disciplinary Rule 1-102(A)(1) in his representation of [E] during July, 1983, by violating Pennsylvania R.D.E. 217(d) or section 91.94. It is reluctant to recommend discipline when there was understandable confusion about the rules not caused by respondent. Nor does it believe that the referral to

attorney [F] in September was engaging in the practice of law within the purview of these rules. It does believe, however, that respondent violated Disciplinary Rule 1-102(A)(4) by failing to include [E] in his list of clients, misrepresenting it to be a complete list. This violation of D.R. 1-102(A)(4) is, of itself, a violation of D.R. 1-102(A)(1). Under these circumstances, however, the mere failure, for whatsoever reason, to include [E] in the list of clients is not a violation of D.R. 1-102(A)(6).

The hearing committee believes that D.R. 1-102(A)(6) is a "catchall" rule. Having dealt with specific charges of misconduct against respondent, the hearing committee does not believe that D.R. 1-102(A)(6) is pertinent to this case.

## II. DISCUSSION

As so often happens, a minor matter was referred to Disciplinary Counsel involving a sum of less than $600. In a thorough investigation, the Office of Disciplinary Counsel, then revealed two bank accounts which were often out of trust and where there were numerous incidents of the commingling of funds and the accounts being out of trust. In mitigation thereto, it must be noted that no client suffered monetary harm by respondent's behavior.

To compound his infraction, respondent then falsely certified compliance to the Disciplinary Board with respect to sending notices of his suspension to his clients.

As noted before, petitioner recommends disbarment while respondent urges that his suspension since June 30, 1983, is sufficient punishment under the circumstances.

We adopt the opinion of the hearing committee as to the drastic nature of the disbarment procedure.

Petitioner has cited Office of Disciplinary Counsel v. Lewis, 493 Pa. 519, 426 A.2d 1138 (1981) as standing for the proposition that disbarment is required in this case. In that case, however, there was clear moral turpitude in that respondent did not respond to client's request for an accounting and kept one-half of collected funds as a contingent fee agreement without having secured the agreement of client. Further, respondent failed to pay medical bills and indicated to his client that this was an oversight. That attorney was also involved in two other similar disciplinary cases.

Petitioner has also cited Office of Disciplinary Counsel v. Knepp, 497 Pa. 396, 441 A.2d 1197 (1982) as standing for the same premise of law. Again, in the Knepp case, there was an element of moral turpitude because there were four separate charges against Knepp for conversion of client funds, one of which involved depositing an I.R.S. check in the attorney's own account and subsequently lying about it and telling his client the check was stale and had to be returned to the I.R.S.

We note in this case that there is no finding of moral turpitude against respondent nor is there a pattern of deliberate theft. There is, however, a pattern of slovenly bookkeeping practices and alleged unawareness of the correct procedures concerning the banking of clients' funds. Additionally, there is evidence showing a lack of cooperation and defensive attitude with respect to the Office of Disciplinary Counsel.

Therefore, we believe the recommendation of the hearing committee that respondent be suspended from the practice of law to be a wise recommendation.

## III. RECOMMENDATION

It is therefore the recommendation of the board that respondent be suspended from the practice of law for a period of two and one-half years retroactive to June 30, 1983. Costs are to be paid by respondent.

Mr. McDonald did not participate in the adjudication.

## ORDER

NIX, *C.J.*, And now, this June 11, 1985, upon consideration of the Recommendation of the Disciplinary Board dated April 2, 1985, it is ordered that [respondent] be and he is suspended from the Bar of the Commonwealth for a period of two and one-half years retroactive to June 30, 1983, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.